UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JOHN MARTIN,

      Plaintiff,                     Case No.

vs.

ROBERT SABO

dba

HOME SALOON

      Defendant

_____/

## COMPLAINT AND REQUEST FOR JURY TRIAL

COMES NOW, Plaintiff, JOHN MARTIN, by and through his undersigned counsel, and brings this lawsuit seeking declaratory relief and injunctive relief against Defendant, for violation of Title III of the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act of 1992 (FCRA). The Defendant ROBERT SABO dba HOME SALOON ("HOME SALOON") denied the Plaintiff full and equal enjoyment of the Defendant's services, facilities, and privileges. HOME SALOON also failed to make reasonable modifications in policies, practices, or procedures, and failed to take such steps as are necessary to ensure the Plaintiff was

not excluded, denied services, or otherwise treated differently when he attempted to visit the HOME SALOON.

## JURISDICTION & VENUE

1. This is a civil action for the denial of federally secured rights under the Americans with Disabilities Act of 1990, as amended; 42 U.S.C. §12181, *et seq*. ("ADA").

2. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the claims that arise under state law pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Judicial District because venue lies in the judicial district of the property situs, the Defendant does business in this District, and the events that give rise to this cause of action arose in this District.

## PARTIES

4. Plaintiff JOHN MARTIN (hereafter "MARTIN") is a resident of North Carolina.

5. Defendant HOME SALOON is a sole proprietorship which owns and operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation is a bar/restaurant known as THE HOME SALOON PUB located at 6502 Massachusetts Ave #2730, New Port Richey, FL 34653 in Pasco County.

## FACTUAL ALLEGATIONS

6.  MARTIN is a former combat veteran.

7.  MARTIN suffers from post-traumatic stress disorder ("PTSD"), depression and anxiety.

8.  MARTIN is an individual with a disability under 42 U.S.C. §12102(1)(A), 28 CFR § 36.105(a)(1)(i), because his physical and/or mental impairments substantially limit one or more of his major life activities.

9.  MARTIN has a service dog named "Buddy."

10. Buddy, a Yellow Labrador Retriever, has been individually trained to do work and perform tasks for the benefit of MARTIN which assist MARTIN with his specific disabilities.

11. Buddy is a "service animal" under the ADA, 28 CFR § 36.104.

12. Buddy has been individually trained to assist MARTIN with anxiety attacks and to wake MARTIN if he experiences night terrors.

13. Although not required by law, Buddy wears a service dog vest.

14. Although also not required by law, MARTIN carries a card with information about the ADA as it relates to service animals.

15. HOME SALOON owns and operates a public bar/restaurant which sells both food and beverages to the public.

16. As the owner, lessor, lessee, or operator of the subject premises, HOME SALOON is required to comply with the ADA.

17. HOME SALOON markets itself as a sports bar.

18. On August 31, 2020 MARTIN visited the HOME SALOON intending to meet a friend to shoot some pool.

19. MARTIN was accompanied by Buddy who was wearing his vest.

20. Additionally, MARTIN was carrying a laminated card with the Federal service animal laws.

21. Several patrons of the HOME SALOON that were eating and drinking in the outdoor dining section of the HOME SALOON asked about Buddy. One couple in particular asked if they could pet Buddy, and MARTIN put Buddy on a "break" so that Buddy could say hello to the couple.

22. After petting Buddy, the female member of the couple asked MARTIN if he was going inside the bar, and MARTIN said "yes." She said she would like to buy MARTIN his first drink.

23. As MARTIN approached the entrance to the bar his way was blocked by an employee of the HOME SALOON, who told MARTIN "You cannot come in here with that dog."

24. MARTIN replied, "Yes I can, it is federal law."

25. The HOME SALOON employee blocking Buddy's way sated "The owner has a no pets policy."

26. MARTIN replied that a "no pet" policy does not apply to service animals. The employee began to argue with MARTIN, and MARTIN asked the employee to call the police to sort out the matter because he did not wish to argue.

27. The employee left the front door and went behind the bar to call the police.

28. Because the door was no longer blocked by the employee MARTIN was able to enter the bar accompanied by Buddy.

29. At approximately 10:00 pm the New Port Richey Police Department received a call from an employee of HOME SALOON. The police report indicates the caller's initial statement was "MALE HAS SERVICE DOG AND REFUSING TO LEAVE, OWNER DOES NOT ALLOW ANY DOGS REF LAW SUIT OF ANOTHER DOG BITING ANOTHER CUSTOMER IN PAST." The police report is attached hereto and incorporated by reference as Exhibit A.

30. The female customer that had been petting Buddy outside tried to buy MARTIN a drink, but the bartender stated that she could not serve the customer because the drink was being purchased for MARTIN.

31. The bartender came out from behind the bar and apologized to MARTIN, stating she was not allowed to serve him.

32. Some of the customer inside the bar began to argue about whether MARTIN should be let in with Buddy.

33. MARTIN told the bartender that he would go outside and wait for the police because he did not want to get anyone in trouble.

34. MARTIN, who was becoming increasingly anxious because of the confrontation, went outside and waited for the police to arrive.

35. Another customer, Thomas Hartman, told MARTIN that he was angry about the way MARTIN was treated because he has a family member that relies upon a service animal and his family member had been similarly discriminated against.

36. A police officer arrived and threatened to arrest MARTIN for trespassing if MARTIN did not leave.

37. After MARTIN was threatened with arrest a fight broke out between police officers and Thomas Hartman.

38. During his time at the HOME SALOON Buddy alerted several times indicating that MARTIN was very anxious and could possibly suffer a panic attack.

39. While several officers were on top of Thomas Hartman, the owner of the HOME SALOON came over to MARTIN and acknowledged that Buddy was well trained and obviously a real service dog but stated that he would shut down his business before he let MARTIN or anyone else come in with a service dog.

40. As MARTIN was speaking with the HOME SALOON's owner, another officer disengaged from the fisticuff with Thomas Hartman and shouted at MARTIN to "Get the fuck of the property or I'm going to arrest you for trespassing."

41. MARTIN left the HOME SALOON under the threat of arrest.

42. The HOME SALOON is subject to the mandates of Title III (the ADA) and §760.02 (11), Fla. Stat. as a place of public accommodation.

43. The HOME SALOON knowingly and willfully refused to allow MARTIN the same access to the establishment as non-disabled members, even after MARTIN advised the HOME SALOON that Buddy is a service dog.

44. MARTIN retained Attorney Marcy I. LaHart to represent him in protecting his right to be free from discrimination and enjoy equal access to the amenities provided by the HOME SALOON.

45. MARTIN, a school teacher, spends summers in New Port Richey, where he has many friends. When he returns to New Port Richey he wants to be able to visit the HOME SALOON with his service dog and to be otherwise treated equitably based upon his disability.

46. MARTIN has suffered and will continue to suffer direct and indirect injury as a result of the discrimination by the HOME SALOON until the HOME SALOON is compelled to comply with the requirements of the ADA and the FCRA .

47. MARTIN has a realistic, credible, existing and continuing threat of discrimination from the HOME SALOON's non-compliance with the ADA and the FCRA.

48. The HOME SALOON has discriminated against the Plaintiff by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the subject property, as prohibited by 42 U.S.C. § 12182 et seq. and §760.02 (11), Fla. Stat.

49. In this action MARTIN seeks an injunction to protect the rights of disabled persons, including MARTIN, to be accompanied by a service dog.

50. MARTIN is without adequate remedy at law and is suffering irreparable harm. MARTIN has retained the undersigned to represent him in this cause and seeks an award of attorney's fees and costs for bringing this matter and incurred in protecting his Civil Rights.

51. Pursuant to 42 U.S.C. § 12188 and §760.11(5) Fla. Stat. this Court is provided with authority to grant MARTIN Injunctive Relief, including an order to require the HOME SALOON to make the HOME SALOON readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA and FCRA by requiring the HOME SALOON to allow service dogs; or by closing the facility until such time as the HOME SALOON cures its violations of the ADA and FCRA.

## COUNT I
## HOME SALOON'S FAILURE TO MAKE REASONABLE MODIFICATIONS
## IN VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990

52. Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 through 51 as if fully set forth herein.

53. THE HOME SALOON is a public accommodation pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.102(a)(1).

54. Pursuant to 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a):

> *No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

55. Among the specific prohibitions against discrimination included in Title III of the ADA is "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. §12182(b)(2)(A)(ii); 28 C.F.R. §36.302(a).

56. Accommodating service animals in locations where pets are prohibited is a specific example of the type of modification required by the ADA.

57. The HOME SALOON is a place of public accommodation and is therefore required under the ADA and its regulations to provide MARTIN access when accompanied by his service dog in order to permit him equal access to and use of its facilities.

58. The HOME SALOON was informed that Buddy is a service dog.

59. A service animal is a working animal, not a "pet."

60. Defendant intentionally failed to make reasonable modifications in its policies, practices, and/or procedures as necessary to afford MARTIN the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the HOME SALOON's premises, in violation of Title III of the Americans with Disabilities Act, 42 USC § 12182.

61. The HOME SALOON's refusal to allow MARTIN to access the HOME SALOON with his service dog denies MARTIN the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of FDS's premises, in violation of Title III of the Americans with Disabilities Act, 42 USC § 12182.

62. The HOME SALOON's discrimination against MARTIN is intentional and willful; the HOME SALOON has refused MARTIN full and equal access to the establishment having knowledge that MARTIN is a disabled individual and that Buddy is his service dog.

63. Allowing persons with disabilities to be accompanied by service dogs in the HOME SALOON would not fundamentally alter the HOME SALOON's operations or impose undue administrative or financial burdens upon the HOME SALOON.

64. Allowing persons with disabilities to be accompanied by service dogs in the establishment is a feasible modification under the ADA.

65. As a result of Defendant's actions described above, Plaintiff suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and a deprivation of his rights to non-discrimination on the basis of his disabilities. In engaging in this unlawful conduct described above, Defendant acted maliciously to damage the rights and dignity of Plaintiff.

WHEREFORE, Plaintiff respectfully requests the relief listed below.

## COUNT II

## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

66. Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 through 51 as if fully set forth herein.

67. Plaintiff had timely complied with all legally required administrative prerequisites before filing this action.

68. The Florida Commission on Human Relations entered a Notice of Determination of Reasonable Cause on September 14, 2021. The Notice is marked, attached hereto and incorporated by reference as Exhibit B.

69. The HOME SALOON sports bar, owned and operated by Defendant, is a place of public accommodation pursuant to §760.02(11)(b).

70. All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion. Fla. Stat. § 760.08.

71. Defendant violated the Florida Civil Rights Act by discriminating against the Plaintiff with reckless disregard for his rights when the HOME SALOON did not serve Plaintiff and instead attempted to have Plaintiff trespassed from the premises by the New Port Richey Police Department.

72. As a result of Defendant's actions described above, Plaintiff suffered irreparable loss and injury including but not limited to humiliation, embarrassment, emotional distress, and deprivation of his rights to non-discrimination on the basis of Plaintiff's disability.

    WHEREFORE, Plaintiff respectfully requests the relief listed below.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests the following relief:

A. The Court assume jurisdiction;

B. Issue a declaratory judgment that Defendant's policies, procedures, and practices have subjected Plaintiff to discrimination in violation of the Florida Civil Rights Act and Title III of the Americans with Disabilities Act;

C. Enjoin Defendant from any policy, procedure, or practice that will deny individuals, such as Plaintiff, equal access to and an equal opportunity to participate in and benefit from Defendant's services, based on disability, race, or color;

D. Order Defendant to train its employees at the facility in question about Plaintiff's rights, and the rights of individuals who use service animals;

E. Award compensatory damages for violation on the Florida Civil Rights Act;

F. Award punitive damages for violation of the Florida Civil Rights Act;

G. Award reasonable attorney's fees, expenses, and costs of suit; and

      H.    Grant such other relief as the Court may deem equitable and just under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury on all issues which can be heard by a jury.

Respectfully submitted this 19th day of March, 2022.

MARCY I. LAHART, P.A.
249 SE Tuscawilla Road
Micanopy, FL 32667
Telephone: (352) 545-7001
Facsimile:  (888) 400-1464
marcy@floridaanimallawyer.com

BY: *s/ Marcy I. LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
*Counsel for Plaintiff*