UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN MARTIN,

    Plaintiff,

v.

    Case No. 8:22-cv-00640-TPB-MRM

ROBERT SABO
dba
HOME SALOON

    Defendant
_____/

### ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

This matter is before the Court on Plaintiff's "Motion for Entry of Default Final Judgment and Supporting Memorandum of Law" (Doc. 22) filed on October 17, 2022. Based on the motion, argument of counsel, the evidence presented at the May 10, 2023, hearing, the court file, and the record, the Court finds as follows:

### Background[1]

Plaintiff John Martin served in the United Sates Army for four years after graduating from high school and then re-enlisted after the events of September 11, 2001. While serving in Iraq, he was injured when a car bomb detonated near the building where he was sleeping, hurling him across the

---

[1] The facts set forth in this Order are based on the allegations of the complaint, which the Court accepts as true in light of Defendant's default, and on the evidence presented at the May 10, 2023, evidentiary hearing. *See Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

room. His injuries required surgery, and Martin has been diagnosed with PTSD. Because he could not tolerate medication, in 2021 he obtained his service dog, Buddy. Buddy accompanies Martin everywhere, including to his job teaching middle schoolers.

After obtaining Buddy, Martin became more confident about going out in public, something he had avoided since returning from Iraq. Martin's mental health care provider suggested he get out in public more often, and on August 31, 2020, he accepted a friend's invitation to play pool at Home Saloon, a sports bar close to Martin's current home. The Home Saloon is operated as a sole proprietorship by Defendant Robert Sabo. When Martin arrived at the Home Saloon, a customer outside the bar offered to buy Martin a drink. However, when Martin attempted to enter the Home Saloon, the bar manager blocked his way and told him he could not come in with a dog. Martin replied that federal law allowed him to do so, but the manager said that the owner had a "no pets policy." Rather than argue with the manager, Martin asked her to call the police.

The manager went to talk to Sabo and then, at Sabo's direction, called the police. Martin entered the bar. The customer that had offered to buy him a drink tried to do so, but the bartender stated she could not serve Martin, although she apologized to him for what was happening. Some customers in the bar began arguing about whether Martin should be allowed

inside the bar with Buddy. Martin told the bartender he did not want anyone to get in trouble over Buddy, and decided to wait outside for the police.

Two police officers arrived. While one of them took Martin's information, the other went inside to speak with Sabo. That officer returned and told Martin to leave or he would be arrested for trespassing. Martin explained that denying him access to the bar because of his service dog was an ADA violation, but the officer refused to allow him to enter. The officer turned his attention to another patron and became involved in an altercation. Sabo approached Martin and acknowledged that Buddy was well-behaved and was obviously a service dog. Sabo said, however, that he would shut his bar down before allowing a patron with a service animal. Martin went home.

After exhausting his administrative remedies, Martin filed this suit against Sabo, alleging that Sabo had violated the Florida Civil Rights Act, §§ 760.01 to 760.11 and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (Doc. 1). Service was effectuated on Sabo on March 25, 2022. (Doc. 6). Sabo did not file a response to the complaint and the Clerk entered a default on April 25, 2022. (Doc. 9).

Martin filed a motion for default judgment. (Doc. 18). The Court denied the motion without prejudice because the motion failed to include a legal memorandum demonstrating Martin's entitlement to judgment; failed to demonstrate that Sabo had been served, was not a minor or incompetent, and was not in military service; and failed to indicate whether Martin

demanded a jury trial on damages. (Doc. 19). Martin filed an amended motion for default judgment that remedied these procedural deficiencies, and the Court set a hearing on the question of damages. (Docs. 22; 31; 32; 33).

The Court held an evidentiary hearing on May 10, 2023 solely on the issue of damages. (Doc. 34). Martin recounted the facts set forth above and described the impact the incident at the Home Saloon has had on his life.

## Legal Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). "[B]efore entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). If the complaint states a claim, the Court must then determine the amount of damages and, if necessary, "may conduct hearings . . . [to] determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B).

## Analysis

*Allegations of the Complaint*

Because the Clerk entered default against Sabo, Martin's well-pleaded allegations are considered true.

Section 760.08 of the Florida Civil Rights Act (the "FCRA"), titled "Discrimination in places of public accommodation," states:

> All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion.

Similarly, the Americans with Disabilities Act (the "ADA") provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

To state a claim of disability discrimination under the ADA, the plaintiff must plausibly allege that (1) the plaintiff is an individual with a disability within the meaning of the ADA; (2) the defendant owns or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff by denying the plaintiff, on the basis of the plaintiff's disability, full and equal enjoyment of the goods and services provided by the defendant. *See Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1231 (11th Cir. 2021); *Kennedy v. Orion Beach Dev. V LLC*, No. 8:18-cv-525-T-30TGW, 2018 WL

11508151, at *2 (M.D. Fla. Dec. 21, 2018).  Actions under the FCRA are analyzed under the same framework as the ADA.  *Chanda v. Engelhart/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000).

As to the first element, "[t]he ADA defines the term 'disability' as (1) a physical or mental impairment that 'substantially limits one or more' of an individual's 'major life activities,' (2) a 'record of such an impairment,' or (3) 'being regarded as having such an impairment' as described in subsection (1)."  *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (quoting 42 U.S.C. § 12102(1)).  Plaintiff's complaint alleges that he is a former combat veteran and suffers from PTSD, depression, and anxiety that substantially limit one or more major life activities.  (Doc. 1 at ¶¶ 6-8).  Plaintiff is a qualified individual with a disability under the ADA.

As to the second element, 42 U.S.C. § 12181(7) provides a list of public accommodations that qualify under Title III.  "[R]estaurant[s], bar[s], or other establishment[s] serving food or drink" appear on the list.  42 U.S.C. § 12181(7)(B).  The complaint alleges that the Home Saloon is a sports bar that sells food and drink to the public.  Accordingly, the second element of Plaintiff's prima facie case is satisfied.

The third element is also satisfied.  Discrimination under Title III of the ADA includes denying a disabled individual the opportunity "to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."  42 U.S.C. § 12182(b)(1)(A)(i).

Martin alleges that he went to the Home Saloon to play pool with a friend but was denied service because he was accompanied by his service dog Buddy.

Because Martin seeks injunctive relief, he must also demonstrate "a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Wooden v. Bd. Of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1283 (11th Cir. 2001). This requires "a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury." *Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001). The complaint alleges that Martin "spends summers in New Port Richey, where he has many friends. When he returns to New Port Richey he wants to be able to visit the HOME SALOON with his service dog and to be otherwise treated equitably based upon his disability." (Doc. 1 at ¶ 45). The Eleventh Circuit has held similar facts sufficient to show a "real and immediate" threat of future injury. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1337 (11th Cir. 2013) ("[Plaintiff] has been to the store in the past, he wants to return, and his frequent trips directly past the store render it likely that he would do so were it not for the alleged ADA violations in the Presidente Supermarket."); *Shotz*, 256 F.3d at 1082 (suggesting that an intent to visit a public accommodation in the future may satisfy the injunctive relief standard).

Accordingly, the Court concludes that the complaint states a claim under the ADA and the FCRA.

***Damages, Injunctive Relief, and Attorney's Fees***

Actions under Title III of the ADA (public accommodations) do not provide for monetary damages.  *See Houston*, 733 F.3d at 1329 (noting that injunctive relief is the only form of relief available to plaintiffs suing under Title III of the ADA).  However, under the FCRA the court "may award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages." § 760.11(5), *F.S*.  Damages for emotional distress may be inferred from the circumstances surrounding the situation as well as proved by testimony.  *Marble v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983).

When questioned by his counsel regarding the amount of damages he sought to recover, Martin struggled to answer, but ultimate suggested $100,000.  Counsel referred the Court to another Middle District of Florida case involving somewhat similar facts, *Lombard v. Another Southern Holding Company, LLC*, No. 6:17-1952-Orl-31DCI, 2019 WL 1518699 (M.D. Fla. Apr. 8, 2019) (Presnell, J.).  In *Lombard*, the plaintiff also served in the military, suffered severe injuries, and suffered from PTSD.  *Id*. at *1.  He obtained a service dog who accompanied him constantly.  *Id*.  The plaintiff was homeless for several weeks in 2017 until he found an apartment he could afford, but the owner refused to allow the dog to accompany him.  *Id*. at *2.  The plaintiff surrendered the dog to a rescue organization, hoping the separation would be temporary, but the dog was hit and killed by a car some months later.  *Id*.

The plaintiff "testified that he was devastated by the discrimination and by his inability to have [his dog] with him." *Id.* His social anxiety increased, and on the occasions when he does go out he is "hypervigilant and hypersensitive to loud noises." *Id.* Plaintiff testified that he felt "overwhelmed, angry, and sad," and that he had "lost faith in humanity." *Id.* The court found that the incident of discrimination and ensuing loss of the plaintiff's dog had a "profound and devastating effect on [the plaintiff's] life," and awarded $100,000 in compensatory damages and $100,000 in punitive damages. *Id.* at *3.

Based on Martin's testimony at the hearing, the incident at the Home Saloon was disturbing to Martin, who subsequently curtailed his social activities for fear of another unpleasant encounter regarding Buddy. Martin no longer feels confident about going to public places such as restaurants and calls businesses before visiting them to avoid another incident. Martin is entitled to compensation for the mental anguish he suffered during the incident at the bar and thereafter. At the same time, Martin has not shown that the ill effects of the incident approach those described in the *Lombard* case, or that they will be permanent or long-lasting. The Court accordingly finds that $5,000 constitutes fair compensation to Martin for the mental anguish, loss of dignity, humiliation, and other intangible effects he has experienced because of Sabo's conduct.

Martin also seeks injunctive relief.  While Martin now resides in North Carolina, he visits friends in New Port Richey during his summers off from teaching and would like to visit the Home Saloon during those visits, provided he has assurance he will not be harassed or denied service because he is accompanied by a service animal.  Injunctive relief is appropriate in this case.  Sabo is therefore enjoined and prohibited from denying service to persons with service animals in violation of the ADA and the FCRA.

Plaintiff also seeks to recover attorney's fees and costs under 42 U.S.C. § 12205.  Section 12205 provides that "[i]n any action . . . commenced pursuant to this chapter, the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ."  42 U.S.C. § 12205.  The FCRA similarly provides for an award of reasonable attorney's fees to the prevailing party.  § 760.11(5), *F.S.*

Local Rule 7.01 provides for the filing of a motion as to entitlement to fees and non-taxable costs within 14 days of a judgment.  The motion as to entitlement must specify the judgment and statutory or other ground entitling the party to an award of fees, state the amount sought or a reasonable estimate, and include a memorandum of law.  Within 45 days of an order determining entitlement, the party claiming fees and expenses must file a motion as to the amount of fees and expenses sought that addresses various issues set forth in the rule.  Rule 7.01(c)(1)-(5), M.D. Fla. R.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiff's "Motion for Entry of Default Final Judgment and Supporting Memorandum of Law" (Doc. 22) is **GRANTED**.

(2) The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff John Martin and against Defendant Robert Sabo providing that Plaintiff John Martin recover from Defendant Robert Sabo the amount of $5,000, and further providing that Defendant Robert Sabo d/b/a Home Saloon is enjoined and prohibited from denying service to persons with service animals in violation of the Americans with Disabilities Act, and the Florida Civil Rights Act and their implementing regulations.

(3) Plaintiff must file a bill of costs setting forth any taxable costs he seeks to recover as the prevailing party.

(4) Plaintiff may within 14 days of entry of judgment file a motion addressing his entitlement to recover fees and non-taxable costs and expenses in compliance with Local Rule 7.01(b).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of July, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**